[Civ. No. 13341. First Dist., Div. One. Dec. 19, 1947.]

JOHN F. CURTIS, Respondent, v. JOAN CURTIS, Appellant.

Harriet A. Haas and Jerome L. Schiller for Appellant.

Andrew Bodisco for Respondent.

FINLEY, J. pro tem.—Defendant appeals from a default judgment in favor of her husband granting him an annulment of the marriage. Two notices concerning appeal were given. The first was filed May 28, 1946, and recites that defendant "desires and intends to present her appeal from the order . . . denying her motion to vacate and set aside the judgment of annulment of marriage . . . wholly on a settled statement." The second notice filed May 31, 1946, recites that "defendant . . . hereby appeals . . . from the judgment . . . entered . . . and from the whole thereof." A subsequent notice, filed June 8, 1946, gives notice of defendant's election "to set forth the oral proceedings had in the above entitled court and cause by a settled statement, on her appeal from the judgment rendered and entered therein, in lieu of a reporter's transcript."

Plaintiff's complaint is in two counts. The first count is directed toward a judgment of annulment and reads as fol-

lows: "That plaintiff and defendant were ·purportedly married in the City of San Rafael, County of Marin, State of California, on or about the 22nd day of March, 1945; that there were no children nor was there any child born the issue of said purported marriage; that there is no community property of the parties hereto; that plaintiff and defendant separated on or about November 15, 1945, at which time plaintiff had fully ascertained the true facts as hereinafter set forth.

"That at the time of said purported marriage and when plaintiff's consent thereto was given, defendant represented to plaintiff, directly and by implication, that defendant was a normal woman in all respects as generally understood between normal persons; that at said time, defendant well knew that defendant was not normal person mentally; that said defendant was, further, at one time confined to a mental institution; that defendant was not generally sound mentally or physically; that said condition of defendant was unknown to plaintiff at the time of said purported marriage; that plaintiff relied on said direct and implied representations of defendant and entered into said purported marriage upon said implied and direct representations of defendant as aforesaid; that shortly after said purported marriage, defendant indicated to plaintiff by conduct the said unsound condition of defendant; that plaintiff, upon investigation, found the true situation as to defendant's present and past mental condition; had plaintiff known the facts as hereinbefore stated, that plaintiff would not have entered into said purported marriage, and that upon learning said true facts, plaintiff separated from defendant, and brought this action."

In the second count plaintiff sets forth the jurisdictional facts; alleges that the parties were married in San Rafael, Marin County, California; that there are no children and there is no community property, and charges defendant in general terms with extreme cruelty. The prayer is that the "marriage be declared null and void; or that the bonds of matrimony between plaintiff and defendant be dissolved."

No appearance was made by defendant and the action came on for trial as a default matter. Plaintiff and one other witness testified, whereupon the court, on March 7, 1946, granted plaintiff judgment annulling the marriage. After the judgment was filed and recorded, defendant filed a notice of motion to vacate and set aside her default and the judgment on three grounds: "(1) that said default and judgment, and each of

them, was obtained and entered contrary to and against an express statement, stipulation and agreement made by plaintiff's attorney; (2) the complaint does not state facts sufficient to constitute a cause of action for annulment of marriage; and (3) the judgment is unsupported by any competent, satisfactory evidence and is opposed to reason and the evidence.''

This notice of motion was accompanied by an affidavit sworn to by defendant's attorney, but it was not accompanied by an answer or any other pleading sought to be filed. Inasmuch as there was raised no question of jurisdiction predicated upon lack of or irregularity in service of summons, the motion must be considered as having been made pursuant to the provisions of section 473, Code of Civil Procedure. That section provides that if an application for relief pursuant to its provisions is not accompanied by an answer or other pleading to be filed, the application shall not be granted. Since here no answer or pleading accompanied defendant's application, her motion was properly denied.

Defendant raises two further points: (1) That the complaint is insufficient in that it contains only the allegation that the parties were *purportedly* married, and (2) that the evidence is insufficient to sustain a judgment of annulment. The second point will be considered first.

In this state, an action for annulment of a marriage is purely statutory. The grounds upon which such relief may be granted are contained in section 82 of the Civil Code. The portion of that section relevant here reads as follows: ''A marriage may be annulled for any of the following causes, existing at the time of the marriage: Four. That the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife.''

As stated above, at the trial of this action only plaintiff and one other witness took the stand. According to the settled statement plaintiff testified as follows: ''I am a resident of the City and County of San Francisco, and have been a resident of said city and county for four years. The defendant and I were married at San Rafael, Marin County, State of California, on March 22nd, 1945. I separated from her about September 18th, 1945. I knew the defendant for three months prior to the marriage. During that time I did not observe anything unusual about her behavior. After

I married her, I took her on a six weeks' honeymoon to New York and other eastern cities and points. On the second night out she began to act funny and talked in her sleep and made murmurings and giggling, and funny laughing. She would get into these fits of hysteria, every night, just before she would awaken. During the daytime on this trip she exhibited unusual behavior. Whenever she would go to buy anything it would be in pairs. If she was going to buy a girdle, it would be two girdles, if it was a dress it would be two dresses. On one occasion, in New York, while there was a shortage of Kleenex, the man told her she could have one and she wanted two. During this course of hysteria she told me that she forgot to tell me before we were married that she escaped from an institution in Dallas, Texas. She was there under her maiden name but she did not say what kind of an institution it was. Outside of these fits of hysteria she would deny that she was ever hospitalized. If I asked her in a normal conversation whether she was ever in that condition she would say it was not true. I continued to live with Mrs. Curtis after we returned to San Francisco. She had two children—girls—by a prior marriage. One is 17 and the other is 14 years of age. I rented a nice apartment in the city here and took the two girls into my home. About a week afterwards, the two girls started fighting with each other, and one day they just tore each other almost apart and knocked each other out, and they came down to my place of business—that happened continuously. They are now wards of the Juvenile Court. They voluntarily surrendered themselves to the Juvenile Court authorities to escape their mother. In the Juvenile Court they said they hated each other. After I returned from the honeymoon and these things took place I endeavored to ascertain which institution my wife was hospitalized in. The girls told me on several occasions that her mother was taken away from her when she was a youngster. She did not know definitely because a negro maid took care of her for sometime. I was unable to find out that my wife had been hospitalized under her married name. My wife's hysterical fits continued after I began living with her in San Francisco. She did other unusual things. Sometimes when I would have a hard day at the office I would come home, and want to lie down for a while, and she would start singing hysterically, and to pass remarks about me being too old, and so forth. Her hysteria

continued almost every night. Most of the time I would go out and walk around the block. I did not try to have her treated by a physician. She is a Christian Scientist and I had a practitioner work on her for three months who then gave up the case. Eventually I moved away from my wife. She is a musician—pianist and organist, and is supporting herself now. After I moved away I sold some property for $750.00 and gave her one-half of it. I discussed my wife's case with a Mrs. Clark of the Juvenile Court and she asked my opinions to whether or not Mrs. Curtis should be committed. I told her possibly she was not bad enough to be committed, but that I would try and .see that some friend or some one would have her placed in a private institution, or in some home, where she may recover. I did not know anything about my wife's physical condition, prior to my marriage. If I had known that I would not have married her."

■ By reason of the provisions of the Civil Code above quoted, it becomes unnecessary to consider the adequacy of this evidence to support plaintiff's allegation of fraud, which is the ground upon which the annulment was granted. Plaintiff by his own testimony has established the fact that after the marriage the parties lived together for approximately six months, and that he discovered the alleged fraud during a six weeks' honeymoon just after the marriage. This means that he lived with defendant at least four and a half months after the discovery. Such conduct on plaintiff's part brings the case clearly within the vitiating provision of subdivision four of section 82, Civil Code. There is nothing in his testimony to indicate that he made any new discoveries concerning defendant's alleged fraud after the honeymoon was over. It must therefore be assumed that he lived with her for the four and a half months with full knowledge, and there is no evidence that this cohabitation was not free and voluntary. Since the statute places no limitations on the time this free cohabitation must endure, we hold that a period of four and a half months falls within the purview thereof.

Inasmuch as the judgment must be reversed for the reasons just stated, it become unnecessary to discuss the point raised by defendant pertaining to the sufficiency of the complaint.

The judgment is reversed.

Peters, P. J., and Bray, J., concurred.