[Civ. No. 8170.   Third Dist.   Oct. 22, 1952.]

W. MANHA, Appellant, v. GRASS VALLEY MEAT COMPANY (a Copartnership) et al., Respondents.

Kearney & Adams and Lewis & Lewis for Appellant.

Lynne Kelly and Louis V. Skinner for Respondents.

SCHOTTKY, J. pro tem.—This is an appeal by plaintiff from a judgment in favor of defendants in an action brought for the conversion of 11 head of cattle.

The complaint was in three counts, alleging the wrongful conversion to their own use by defendants of 11 head of appellant's cattle, of a reasonable value of $2,200, with an additional $400 claimed as reasonable compensation for efforts expended in pursuit of the aforesaid personal property. Paragraph I of the complaint alleged: "That at all times herein mentioned plaintiff was the owner of and entitled to the immediate possession of the following personal property: Eleven (11) head of white face cattle, branded M 7 on right hip."

Defendants' denial of plaintiff's ownership of the cattle was in the following form: "Allege that these defendants are informed and believe that at all times mentioned in said complaint, H. R. Kain was the owner of, or was vested with power and authority to sell for and on behalf of the owner of, and entitled to the immediate possession of the personal property described in said complaint, and placing their denial on such information and belief, deny each and every, all and singular, the allegations contained in paragraph numbered I of the first cause of action of said complaint."

The trial court found against plaintiff's allegation of ownership and also found: "That plaintiff has failed to prove his

title to, ownership of, or right to possession of the personal property described in said complaint. That said answering defendants acquired a good and valid title to said personal property as against plaintiff by their purchase thereof from H. R. Kain.'' The court found further against plaintiff's allegations as to conversion and reasonable value, and found that defendants had used reasonable care in determining title to the cattle, and believed Kain to be the owner, and had negotiated their purchase from him for the sum of $1,365.55.

The principal contention of appellant is that the evidence does not support the judgment, and before discussing this and other contentions of appellant we shall give a brief summary of the evidence as shown by the record.

Appellant, operator of a cattle ranch near Fallon, Nevada, testified that he heard rumors of cattle rustling, had his herd checked, learned from his employees that 59 head of his cattle were missing, and in his efforts to trace the cattle he traveled as far as Reno, Nevada. He used the brand M 7 on the right hip, and he heard from the witness Williams that respondents had bought and slaughtered 11 head of white-faced cattle branded M 7 on the right hip, whereupon he made demand upon respondents for payment at the rate of $200 per head on the assumption that they were his cattle and were 4 to 5 years of age. On cross-examination, appellant admitted that he customarily sold about 80 head of cattle each year, and that he had on occasion sold young cattle bearing his brand, for shipment to California, though it was his usual custom to sell only the older animals. One Dexter Hurley testified that he met Kain on April 21, 1948, at his (Hurley's) home in Fallon, Nevada, that they left Fallon at about 11 p. m. that night and proceeded to the Sparks stockyard where they loaded 11 head of cattle, and proceeded at 4 or 5 a. m. on April 22, 1948, to Grass Valley, California, arriving there at about 2 p. m. of April 22d. Hurley said the cattle they loaded were branded M 7, and that he knew of his own knowledge that that brand belonged to appellant. He said they took the cattle to the Grass Valley Meat Packing Company where, in the absence of anyone else, they spoke to Mrs. Gliko, wife of one of respondents herein, who told them to unload the cattle, which they did at the Grass Valley Meat Company slaughterhouse corrals. Respondent Gliko testified that the cattle were slaughtered within two days at most from date of purchase on April 22, 1948, although he was not himself present; that as soon as

the animals were slaughtered the hides were placed in a vat of brine solution, the same as hides of any other animals slaughtered; that within a few days of the transaction one Tom Williams of the Nevada State Police telephoned him to inquire if he had purchased four or five cows from a "Doc Kain"; that he readily admitted having purchased some cattle from Kain; that pursuant to Williams' request he had several of his employees go through the vat to pick out the first 11 M 7 hides, although the vat contained about 500 hides, from all states in the Union, and that the 11 hides which were taken out were the first ones of that brand which they came across and were not the only M 7 hides in the vat at that time. Gliko further testified that he did not then know the M 7 brand was that of appellant. He also testified that they had purchased three M 7's from one Angelo Piazzi, although it later developed that this testimony was not based upon his personal dealings with Piazzi, but on his agent's dealings with Piazzi. Gliko's testimony as to the age of the cattle was that they ranged from 3 to 9 years, with half being less than 5 years old and half being above that age. Williams testified that the day after his 'phone conversation with Gliko he went to Grass Valley, that Gliko cooperated by having the hide vat checked and that four M 7 hides were pulled therefrom, that he took one of these though he finally threw it away because it spoiled. Williams also testified that he asked to see the bill of sale covering respondents' purchase from Kain, noted that the brand was listed as on the left hip instead of the right, and told Mrs. Gliko to change it, which she did. ■ There was also introduced into evidence, over defense counsel's objection, a "Livestock Transportation Permit," issued to H. R. Kain, for the transportation of 11 head of cattle, brand M 7 RH, loading point Fernley Valley, destination Grass Valley. One Wayne Cutlip testified that appellant Manha was not the only owner of the right hip M 7 brand, that the brand was also used by an Indian in Nevada, and that he had seen such cattle. While appellant Manha testified that he was the owner of the M 7 brand, he produced no evidence of having registered it as his lawful brand. Appellant did attempt to offer into evidence the Federal District Court record showing the conviction of Kain for the transportation in interstate commerce of 11 white-faced cows branded M 7 on the right hip which Kain knew to have been stolen; defendants' objection was sustained, and the court refused the offered evidence.

Appellant first attacks the finding against him as to title by claiming that by reason of the form of respondents' denial there was no issue in the pleadings as to the ownership of the cattle. Appellant cites *Harpending* v. *Meyer*, 55 Cal. 555, where the court said at page 560:

"We are unable to perceive, however, that a person can ever be considered a *bona fide* purchaser of goods from one who has no right to sell, in a case where the rule of *caveat emptor* applies. The law imputes notice to him. Under that rule he is not only put upon inquiry, but he is conclusively presumed to have ascertained the true ownership of the property before purchasing it."

Appellant argues that respondents, being conclusively presumed to know the title to the cattle possessed by Kain, would not be permitted to allege Kain's title on information and belief as they did, and any denial of appellant's title on that ground would not raise an issue, citing 21 California Jurisprudence, section 100, page 149, as to matters presumptively known to a defendant.

There is no merit in this contention of appellant for several reasons. The Harpending case cited by appellant did not deal with a matter of pleading but only with the statute of limitations. It appears from the record that the instant action was tried on the theory that the title was in issue; in fact, practically all of the evidence was directed to that issue. ▮ And as stated in 2 California Jurisprudence, page 1031: ". . . it must be remembered that issues may be made at the trial as well as by the pleadings. And if the parties treat certain matters as in issue, they will not afterwards be heard to say that no such issue was raised on the trial."

▮ Furthermore, we believe that under the circumstances of the instant case it was proper for respondents to deny appellant's title on information and belief as they did. Kain informed them that he was the owner of the cattle and showed them a transportation permit, and they purchased the cattle relying on such information. While they might well have made a simple denial of appellant's title, we are satisfied that the form of respondents' denial sufficiently placed appellant's title in issue and that no possible prejudice resulted to appellant.

▮ Appellant next asserts that the evidence does not support the finding against his claim of title. He argues that the undisputed evidence in the record indicates that the cattle

belonged to him, and then cites the rule that a court may not completely disregard the undisputed evidence.

In *Norgard* v. *Estate of Norgard*, 54 Cal.App.2d 82, this court said at page 89 [128 P.2d 566]:

". . . The trial court is the sole judge of the weight and effect of testimony and of the credibility of witnesses, and is free to disbelieve them, even though they are uncontradicted, if there is any rational ground for doing so. (*Davis* v. *Judson*, 159 Cal. 121 [113 P. 147].) As was said by our Supreme Court in the very recent case of *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]:

" 'There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility." Section 2061(3) of the Code of Civil Procedure provides: "That a witness false in one part of his testimony is to be distrusted in others." In passing upon the credibility of a witness, the jury is entitled to consider his interest in the result of the case. (See cases collected in 27 Cal.Jur. 180, Sec. 154.)' "

And as was said in the case of *Davis* v. *Judson*, 159 Cal. 121 [113 P. 147], at page 128:

"It is insisted by appellants that this testimony of Wilson stood uncontradicted and that the court had no right arbitrarily to reject it and find to the contrary.

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that

there are no matters or circumstances which at all impair its accuracy."

Applying the test of these authorities to the testimony of appellant's witnesses we believe it cannot be said that "there are no matters or circumstances which at all impair its accuracy," and that even if appellant's contention that it is undisputed were correct the trial court was compelled to find in accordance with appellant's contention.

However, as pointed out by respondents, there was evidence that appellant was not the only person using the M 7 brand and that appellant had failed to link up the 11 head purchased by respondents with the 59 head which he had lost because those 59 were last seen at or near Fallon, Nevada, and the 11 first came into the testimony at Sparks.

Furthermore, respondents are entitled to rely upon the disputable presumptions contained in section 1963, subdivisions 11 and 12, of the Code of Civil Procedure, "that things which a person possesses are owned by him," and "that a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership." (*Whiteside* v. *United Theatres*, 106 Cal.App.2d 471 [235 P.2d 261].) These presumptions, of course, are a species of evidence.

While it must be conceded that the preponderance of the evidence indicates strongly that appellant was the owner of the 11 head of cattle, we cannot say upon the record here, and in view of the presumptions referred to, that the finding of the trial court to the contrary is without support in the record. Appellant could only prevail upon the strength of his own title and it was for the trial court to weigh the evidence produced by appellant against the presumptions and other evidence.

Appellant contends also that the court erred in the rejection of material evidence offered by him, to wit, the record of criminal conviction of Kain, wherein there was a plea of guilty. Appellant's theory is that the declarations of the thief as to the ownership of property found in his possession are admissible against one deriving title through him, and that pleas of guilty in criminal cases, where such pleas constitute a material admission of responsibility, are admissible.

There is no merit in the contention. In the first place the record offered was not a case involving the theft of cattle but was a prosecution for transportation in interstate commerce of stolen cattle with nothing to show the ownership of the

cattle so transported. Kain was neither a party to nor a witness in the instant action and respondents were not parties to the criminal action, and there is no possible theory upon which such evidence would be admissible.

No other points raised require discussion.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.