[Civ. No. 22267. Second Dist., Div. Three. Mar. 1, 1957.]

ISABELLE KROSSBER DOUGLASS, Appellant, v. RUSSELL DOUGLASS, Respondent.

Krag & Krag and William L. Mock for Appellant.

No appearance for Respondent.

SHINN, P. J.—Isabelle Krossber Douglass sued Russell Douglass for annulment of their marriage contracted August 9, 1955. She alleged that her consent to the marriage was induced by defendant's fraud in that he falsely and fraudulently represented to her that he was an honest, law abiding, respectable and honorable man and concealed from her his real character; she believed and relied upon said representations and otherwise would not have consented to the marriage. Defendant, in fact, had been convicted March 17, 1951 in Minnesota of the offense of grand theft; he was paroled to the Minnesota State Board of Parole; February 18, 1952, by order of the court, stay of execution of sentence was vacated and he was committed to the county jail at Moorhead, Minnesota. The foregoing facts were concealed from plaintiff with the fraudulent intent of deceiving her; November 24, 1955, upon the discovery of the falsehood of defendant's representations and of his true character, plaintiff severed her relations with defendant and has not since cohabited with him. Late in 1955, defendant was apprehended by law enforcement officers of Minnesota, was returned to that state and placed in jail. Defendant defaulted and his default was duly entered.

Plaintiff testified at the trial to all the facts alleged in her complaint. Some three months after the marriage, law enforcement officers appeared at the Douglass home, took defendant into custody and caused him to be returned to Minnesota. Documentary evidence was introduced as proof of the Minnesota conviction, parole and revocation of parole. The revocation was due to the failure of Douglass to support two children by a previous marriage. At the time of the trial Douglass was still incarcerated in a Minnesota jail. Plaintiff testified further that prior to her marriage defendant represented that he had "a little girl that was well provided for" whereas, in fact, he had two children and had not supported them. The cause was submitted upon the evidence of plaintiff and the court denied annulment. Plaintiff appeals.

In denying plaintiff relief the court stated: "But I have failed to find any California case that supports the decree of an annulment in a case such as we have here. In fact, I have found a great many cases to the contrary." We have made a diligent search of the authorities and have found no case which would serve as a precedent for denial of a decree of annulment to a plaintiff upon the facts established in the present case. The test in all cases is whether the false

representations or concealment were such as to defeat the essential purpose of the injured spouse inherent in the contracting of a marriage. Nothing short of this would justify an annulment; nothing more is required to establish the voidable character of the marriage contract. The facts of the decided cases are of infinite variety. Quite a few of them are listed in *Schaub* v. *Schaub*, 71 Cal.App.2d 467 [162 P.2d 966] and in *Bruce* v. *Bruce*, 71 Cal.App.2d 641 [163 P.2d 95]. *Millar* v. *Millar*, 175 Cal. 797 [167 P. 394, Ann.Cas. 1918E 184, L.R.A. 1918B 415], discusses the subject of annulment at length. The facts of the present case differ materially from those of all of the California cases involving annulment upon the ground of fraud. Such a factual situation is rarely to be found in the law books. We venture to say that no case is to be found in which any court which was free to decree an annulment of a marriage upon the ground of fraud has refused a decree to a litigant who was shown to be in the unfortunate position which Mrs. Douglass occupied at the time of her trial. Her right to an annulment is to us so clear as to make it wholly unnecessary for us to concern ourselves with the question whether our concept of justice has found expression in the decisions of other courts.

 Section 82 of the Civil Code which lists fraud as a ground for annulment does not specify the particular frauds which will justify the rescission of a contract of marriage, but we do not doubt that either party to the marriage has a right to a decree of annulment where the fraud is so grievous that it places the injured party in a relationship that is intolerable because it cannot honorably be endured. "Equity will not deny relief where a plan of deceit has been laid out and consummated which must inevitably defeat the essential purposes of the deceived party in entering into the relationship." (*Schaub* v. *Schaub, supra,* 71 Cal.App.2d 467, 476.) It would serve no good purpose to engage in a discourse upon the California cases in which various frauds have been held either sufficient or insufficient to justify a decree of annulment.

At the time of her marriage to defendant Mrs. Douglass had two children by a former marriage. There was no reason whatever to doubt that in consenting to marry defendant her purposes were such as any normal mother of two children would have in contracting a second marriage, namely, to have a home, a husband of honorable character whom she could respect and trust, one whom she would be proud to have as a companion and to introduce to her friends, and who would be

a suitable stepfather for her children. These are the essentials of the marital relationship which plaintiff expected and in all these respects her hopes were shattered and her purposes defeated. The facts that defendant stood convicted of grand theft, as a parole violator, a fugitive from justice and a father guilty of failure to support two children of a former marriage were not the only ones which blighted plaintiff's future. Even in those circumstances the defendant might eventually have turned out to be a worthy husband, for it is no doubt true that men who have served prison terms oftentimes prove to be as good husbands as many others whose unacquaintance with prison walls has been due entirely to their good fortune; but the fraud of defendant in concealing his criminal record and true character was a deceit so gross and cruel as to prove him to plaintiff to be a man unworthy of trust, either with respect to his truthfulness, his moral character or a disposition to be a law-abiding citizen. Denial of the prayer of plaintiff for annulment would mean that when defendant is released from prison she must either receive him and extend to him the rights and privileges that are usually due from a wife, or, rejecting and repulsing him, resign herself to the miserable and humiliating existence to which she would stand condemned by the fraud of the defendant and the court's harsh and unsympathetic denial of her plea for liberation. This, in our opinion, would be an unjust and intolerable imprisonment to inflict upon the innocent plaintiff. We can have no part in it.

The judgment is reversed with instructions to grant a decree of annulment.

Wood (Parker), J., and Vallée, J., concurred.