KAUFMAN, P. J.
 

 This appeal is taken from a judgment granting the plaintiff, Raymond Handley, an annulment of his marriage to the defendant, Mary Domokos Handley. The complaint charged that the marriage was induced by the fraud of the defendant in that she secretly had no intention of adopting plaintiff’s name, residing with the plaintiff in a single dwelling or of making known to friends
 
 *744
 
 or others the fact of the marriage or of providing plaintiff with the usual companionship inherent in the marital state. After hearing evidence on both sides, the trial court found that from the date of the marriage on April 20, 1951, until the date of separation, June 17,1957, the defendant conducted herself in a manner consistent with her secret intent; that the plaintiff was unaware of defendant’s secret intent and would not have consented to the marriage had he been so aware; and that the plaintiff did not condone the actions of the defendant nor consent to the type of relationship offered by the defendant, and that upon realizing her real intent, he summarily broke off relations with her. The court also found that there was no issue of the marriage and no community property. There is no dispute about the latter two findings.
 

 On appeal, defendant contends only that: (1) The plaintiff was not entitled to a decree of annulment as a matter of
 
 law;
 
 (2) The evidence does not support the judgment. There is no merit in either of these arguments.
 

 The record indicates the parties were married on April 20, 1951, and separated on June 17, 1957. The defendant testified that from the date of the marriage to the date of the separation, all of her records were in her maiden name, Domokos, including the renewals of her teaching credentials, although she could easily have arranged to change the name on her credentials. It is uncontroverted that on August 28, 1956, defendant took title to a two-bedroom house in her maiden name. When asked why she took title to the property in her maiden name instead of her married name, she answered only that at that time she was still using her maiden name. Until the date of separation, defendant maintained a separate bank account under her maiden name. Her car was also registered under her maiden name. Apparently, the only time the defendant used the plaintiff’s name was in filing joint federal income tax returns during the years 1952, 1953 and 1954. In 1951, 1955, 1956 and 1957, she filed her income tax returns under the name of Domokos and as head of the household. There was also, for a short time, a joint bank account in the names of the defendant and the plaintiff but this was closed out by the defendant in 1957. It is uncontroverted that plaintiff made no withdrawals from this account. It is also uneontroverted that after the date of the separation, the defendant suddenly changed all her records to her married name and made a public acknowledgment of the marriage.
 

 As to the evidence to support the finding of fact that the
 
 *745
 
 defendant had no intention of residing with the plaintiff in the same dwelling, it is nncontroverted that during the entire period of the marriage, the parties did not live together in the same dwelling but maintained separate residences. The defendant testified that immediately after the honeymoon, she returned to the one-bedroom apartment which she shared with her 12-year-old daughter. Thereafter, the defendant moved into another single bedroom apartment which she shared with her daughter for four and one-half years. In 1956, the defendant took title to a two-bedroom house in her maiden name. As the parties were the chief witnesses, there is conflicting evidence on all salient points such as to why the parties chose to live in this manner, why the marriage was kept secret, and whether the plaintiff had keys to any of these residences or had ever stayed at any of these residences. The defendant admitted that since both parties were working, there was no financial reason why suitable larger living quarters could not have been obtained, but she stated that the plaintiff could not move into the Derby Street apartment because of the piano or the house because •. “the arrangement was such, was because I —moving in in August and teaching, I didn’t have any time to straighten it out, and it was filled with books and—as a matter of fact, the study room had been filled with boxes of books, of my books and papers that I have had for—for my teaching, and things that I had collected all through the years.” However, a third party testified that in December, 1957, the defendant had told her she and the plaintiff had never lived together because the defendant did not want to embarrass her daughter. It is uncontroverted that during the entire period of the marriage, the plaintiff lived at various rooming houses and that the defendant never stayed with him at any of these.
 

 The plaintiff testified that he had agreed to an initial short period of separate residences so that the defendant’s daughter could get adjusted to him. It is uncontroverted that the plaintiff and the defendant’s daughter developed an excellent relationship ; that the plaintiff had helped her with her home work and paid her first year’s expenses of college, and that the plaintiff had offered to adopt her but the defendant would not permit the adoption.
 

 The record also indicates that apparently the parties did share the same quarters on their brief vacations away from the area. There was uncontroverted evidence that the defendant had refused to leave the area when the plaintiff had job
 
 *746
 
 offers elsewhere. It is also uncontroverted that the plaintiff did not inform his family of their marriage and that the defendant consistently refused to introduce the plaintiff to her friends and acquaintances and that the defendant never adopted the plaintiff’s name.
 

 Defendant’s first argument is that the above facts as a matter of law, do not constitute a proper ground for annulment under section 82 of- the Civil Code. The statute provides so far as applicable here:
 

 “A
 
 marriage may be annulled for any of the following causes, existing at the time of the marriage: . . .
 

 “Four—That the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife.”
 

 It is well settled that in this state a marriage may be only annulled for fraud if the fraud relates to a matter which the state deems vital to the marriage relationship.
 
 (Maslow
 
 v.
 
 Maslow,
 
 117 Cal.App.2d 237 [255 P.2d 65] ;
 
 Bruce
 
 v.
 
 Bruce,
 
 71 Cal.App.2d 641 [163 P.2d 95];
 
 Bragg
 
 v.
 
 Bragg,
 
 219 Cal. 715, 720 [28 P.2d 1046] ;
 
 Marshall
 
 v.
 
 Marshall,
 
 212 Cal. 736, 738-739 [300 P. 816, 75 A.L.R. 661];
 
 Mayer
 
 v.
 
 Mayer,
 
 207 Cal. 685, 695 [279 P. 783] ;
 
 Foy
 
 v.
 
 Foy,
 
 57 Cal.App.2d 334 [134 P.2d 29].) The fact represented or suppressed, as the case may be, is deemed material if it relates to a matter of substance and directly affects the purpose of the party deceived in entering the contract. The deceived party may be relieved from his contract upon proof that he would not have entered into it if he had known the facts and performance of it would give him substantially less than he bargained for.
 
 (Schaub
 
 v.
 
 Schaub,
 
 71 Cal.App.2d 467, 475 [162 P.2d 966].)
 

 Under the above rules, our courts have held that the following were sufficient to justify an annulment of the marriage: the fact, concealed from the husband at the time of marriage, that the wife did not intend to have sexual relations with him
 
 (Rathburn
 
 v.
 
 Rathburn,
 
 138 Cal.App.2d 568 [292 P.2d 274] ;
 
 Millar
 
 v.
 
 Millar,
 
 175 Cal. 797 [167 P. 394, Ann.Cas. 1918E 184, L.R.A. 1918B 415]); or that one party before the marriage promised to have normal and natural intercourse which might result in the birth of children, without any intention of keeping the promise.
 
 (Maslow
 
 v.
 
 Maslow,
 
 117 Cal.App.2d 237 [255 P.2d
 
 65]);
 
 the fact that the wife concealed from the husband that at the time of their marriage she was pregnant
 
 *747
 
 by another man
 
 (Hardesty
 
 v.
 
 Hardesty,
 
 193 Cal. 330 [223 P. 951]); the known fact of sterility concealed from the other spouse at the time of marriage
 
 (Aufort
 
 v.
 
 Aufort,
 
 9 Cal.App.2d 310 [49 P.2d 620];
 
 Vileta
 
 v.
 
 Vileta,
 
 53 Cal.App.2d 794 [128 P.2d 376]); the concealment of marital history
 
 (Williams
 
 v.
 
 Williams,
 
 178 Cal.App.2d 522 [3 Cal.Rptr. 59]) ; the fact that the husband had represented to the wife that he was an honest law abiding respectable and honorable man when in fact he had been convicted of grand theft, was a parole violator and a fugitive from justice and was guilty of failure to support two children of a former marriage
 
 (Douglass
 
 v.
 
 Douglass,
 
 148 Cal.App.2d 867 [307 P.2d 674]); the fact that the wife married the husband only for the purpose of acquiring an interest in his property and secretly intended to carry on her intimate relations with another.
 
 (Schaub
 
 v.
 
 Schaub,
 
 71 Cal.App.2d 467 [162 P.2d 966].)
 

 Defendant here argues that her secret intent not to live with the plaintiff and not to adopt his name is not a sufficient ground for annulment under the above cited authorities. We cannot agree. As pointed out in
 
 Schaub
 
 v.
 
 Schaub,
 
 71 Cal.App.2d 467 at pages 476 and 477 [162 P.2d 966] :
 

 “. . . [W]here the fraud is so grievous that it places the injured party in a relationship that is intolerable because it cannot honorably be endured, it robs the contract of marriage of all validity. Equity will not deny relief where a plan of deceit has been laid out and consummated which must inevitably defeat the essential purposes of the deceived party in entering into the relationship. Such deceit goes directly to the validity of the contract. Each case must stand upon its own facts and be examined critically in order to determine, if fraud has been shown, whether the consequences which were due to and which did ensue were wholly destructive of the purposes of the innocent party in entering into the marriage relation. ...”
 

 In
 
 Douglass
 
 v.
 
 Douglass,
 
 148 Cal.App.2d 867, the court said at pages 868 and 869 [307 P.2d 674]:
 

 “. . . The test in all cases is whether the false representations or concealment were such as to defeat the essential purpose of the injured spouse inherent in the contracting of a marriage. Nothing short of this would justify an annulment; nothing more is required to establish the voidable character of the marriage contract. The facts of the decided cases are of infinite variety. Quite a few of them are listed
 
 *748
 
 in
 
 Schaub
 
 v.
 
 Schaub, 71
 
 Cal.App.2d 467 [162 P.2d 966] and in
 
 Bruce
 
 v.
 
 Bruce,
 
 71 Cal.App.2d 641 [163 P.2d 95].
 
 Millar
 
 v.
 
 Millar,
 
 175 Cal. 797 [167 P. 394, Ann.Cas. 1918E 184, L.R.A. 1918B 415], discusses the subject of annulment at length. The facts of the present case differ materially from those of all of the California cases involving annulment upon the ground of fraud. Such a factual situation is rarely to be found in the law books. We venture to say that no case is to be found in which any court which was free to decree annulment of a marriage upon the ground of fraud has refused a decree to a litigant who was shown to be in the unfortunate position which Mrs. Douglass occupied at the time of her trial. Her right to an annulment is to us so clear as to make it wholly unnecessary for us to concern ourselves with the question whether our concept of justice has found expression in the decisions of other courts.”
 

 In
 
 Bruce
 
 v.
 
 Bruce, 71
 
 Cal.App.2d 641 [163 P.2d 95], this court was presented with the very question here presented, whether a wife’s persistent refusal to live with her husband in a home provided by him, was a proper ground for annulment. Although we denied the annulment for another reason (insufficiency of the evidence), what we said at pages 643 and 644 there adequately disposes of the defendant’s first argument:
 

 “No
 
 case has
 
 been
 
 cited to us dealing with the particular fraud here involved but we have no hesitation in holding that the secret intention of a woman concealed from her husband at the time of marriage never to live with him in any home provided by him would be a fraud going to the very essence of the marriage relation and of such a vital character as to constitute ground for annulment. We do not consider it necessary to elaborate the reasons for this conclusion further than to point out that the dwelling together of husband and wife in a common home is a major factor in the development of our entire civilization and a commonplace of our daily life assumed and taken for granted by all without question. The right of the husband to choose any reasonable place of living to which the wife must conform was recognized at the common law and is codified in Civil Code section 156. While directed to a wholly different question the discussion of the social importance of the home in
 
 Millar
 
 v.
 
 Board of Public Works,
 
 195 Cal. 477, 492-493 [234 P. 381, 38 A.L.R. 1479] may properly be noticed here.”
 

 The questions relating to the sufficiency of the evidence
 
 *749
 
 to support the findings may be disposed of briefly. Defendant, relying on
 
 Maslow
 
 v.
 
 Maslow,
 
 117 Cal.App.2d 237 [255 P.2d 65], next argues that since fraud is never presumed but must be proved by clear and convincing evidence, the facts alleged and proven here are insufficient to support the trial court’s findings as to: (1) her secret intent not to adopt the plaintiff’s name or live with him, and (2) that upon realizing her real intent the plaintiff broke off relations with her.
 

 We cannot agree. As pointed out above, there was conflicting evidence on all salient points. The applicable rules were well summarized in
 
 Maslow
 
 v.
 
 Maslow,
 
 117 Cal.App.2d 237 at pages 242 and 243 [255 P.2d 65] as follows:
 

 “The presumption is against fraud and it is not overcome by shadowy evidence.
 
 (Shapiro
 
 v.
 
 Equitable Life Assur. Soc.,
 
 76 Cal.App.2d 75, 91 [172 P.2d 725].) Proof of fraud must be clear, convincing, and satisfactory to the court. (12 Cal.Jur., 832, § 81.) And whether the evidence is clear and convincing is primarily a question for the trier of fact.
 
 (Baines
 
 v.
 
 Zuieback,
 
 84 Cal.App.2d 483, 488 [191 P.2d 67];
 
 Riesenberg
 
 v.
 
 Riesenberg,
 
 97 Cal.App.2d 714, 716 [218 P.2d 577].) Where the evidence will support different inferences, the choice of inferences is for the trial court; and its finding, based on the inferences drawn, cannot be disturbed on appeal.
 
 (Bruce
 
 v.
 
 Bruce,
 
 71 Cal.App.2d 641, 644 [163 P.2d 95].) The trier of fact is the
 
 exclusive
 
 judge of the credibility of the witnesses. (Code Civ. Proc., § 1847,
 
 Hicks
 
 v.
 
 Reis,
 
 21 Cal.2d 654, 659 [134 P.2d 788].) The trial court is free to disbelieve and reject the testimony of witnesses even though they are uncontradieted and unimpeached.
 
 (Lohman
 
 v.
 
 Lohman,
 
 29 Cal.2d 144, 149 [173 P.2d 657];
 
 Odenthal
 
 v.
 
 Lee,
 
 113 Cal.App.2d 666, 669 [248 P.2d 937];
 
 Manha
 
 v.
 
 Grass Valley Meat Co.,
 
 113 Cal.App.2d 773, 778 [249 P.2d 45].) These rules apply with particular emphasis to an action for annulment since the state is a silent but active third party to every action to dissolve a marriage. The state is interested in seeing to it that no marriage is declared void as a result of fraud or collusion, and that the statutory grounds on which the annulment is sought actually do exist.
 
 (Maduro
 
 v.
 
 Maduro,
 
 62 Cal.App.2d 776, 779 [145 P.2d 683].)
 

 “ Annulment is not a relief granted promiscuously as a matter of right. The cold record cannot give the look or manner of the witnesses; their hesitations, their doubts, their variations of language, their precipitancy, their calm
 
 *750
 
 ness or consideration. A witness may convince all who hear him testify that he is disingenuous and untruthful, and yet his testimony, when read, may convey a most favorable impression. Did plaintiff and her mother testify with the conviction and assurance compatible with truthfulness; or did either of them give testimony haltingly as though laboring under the handicap of apprehension and uncertainty or did either of them give it glibly as though a tale learned by rote for the purposes of the courtroom ? These are questions which can only be answered by the trier of fact. ...”
 

 In the instant case, defendant’s testimony as to her reasons for not living with the plaintiff and her failure to use his name were sufficient to permit the trial court to infer that at the time of the marriage, the defendant promised to be the plaintiff’s wife without any present intent of performing her duties vital to the marriage.
 

 Defendant further argues that the evidence does not support the trial court’s findings that the plaintiff did not cohabit with her with full knowledge of the fact and thus lost his right for an annulment under section 82 of the Civil Code. Defendant relies on
 
 Curtis
 
 v.
 
 Curtis,
 
 82 Cal.App.2d 965 [187 P.2d 921], wherein the plaintiff was denied an annulment because the plaintiff had discovered the fraud after six weeks of marriage, but continued to voluntarily cohabit with the defendant for at least four and a half months after such discovery.
 

 The Curtis case, however, also indicates that since the statute places no limitation on the time the free cohabitation must endure, the matter rests within the sound discretion of the trial court, as does the question of when the plaintiff has ‘‘full knowledge.”
 
 (Cf. Schaub
 
 v.
 
 Schaub,
 
 71 Cal.App.2d 467, 480 [162 P.2d 966].)
 

 In applying the above rules to the record before us, we can only conclude that the evidence amply supports the findings of the court below and its findings cannot be disturbed on appeal in the absence of an abuse of discretion.
 

 Judgment affirmed.
 

 Draper, J., and Good, J. pro tern.,
 
 *
 
 concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied June 8, 1960.
 

 *
 

 Assigned by Chairman of Judicial Council.