## (December 8, 1975)

■ ESTHER AVNERY, Respondent, v JOSEPH AVNERY, Appellant.—In an action to annul a marriage, the defendant husband appeals from a judgment of the Supreme Court, Kings County, dated November 6, 1974, which, after a nonjury trial, *inter alia,* granted the annulment. Judgment reversed, on the law and the facts, without costs, and case remitted to Special Term for further proceedings consistent herewith. This action for annulment was brought pursuant to subdivision (e) of section 140 of the Domestic Relations Law on the ground that plaintiff's consent to the marriage was obtained by fraud. Contrary to the finding by the trial court, we conclude that plaintiff failed to establish her cause of action. In order to obtain an annulment on the ground of fraud, a plaintiff must establish fraud which is " 'material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage' *(di Lorenzo v. di Lorenzo* [174 N. Y. 467], p. 471), and is 'of such a nature as to deceive an ordinarily prudent person.' (Id. p. 474)" *(Shonfeld v Shonfeld,* 260 NY 477, 479–480). Plaintiff sought to annul her marriage on the ground that defendant had falsely represented that he loved her. She alleged that he misrepresented not only his love, but also his prior business experience and expertise and that he married not for love, and not to provide her with a home, etc., but solely to take over her businesses and real and personal property. The record reveals that plaintiff met defendant while visiting Israel in June, 1971. Theirs was a whirlwind courtship; she took him back to New York, where they were married on July 4, 1971. They lived together, albeit not always in harmony, for more than two years. Plaintiff literally threw her money away on defendant and his family during that entire period. She bought him new teeth, new

clothes, and a new hairpiece; she paid for his transportation to America and for all of the expenses of the wedding; she also paid the expenses of bringing defendant's sister and son and daughter-in-law to America; and she transferred one half of the real property which she owned in Brooklyn to defendant. She did all of this willingly and without hesitation. She was an experienced business woman who had been married more than once prior to meeting defendant. She *knew* that defendant was divorced and that he had virtually no assets of his own. In short, plaintiff may have been disappointed in how her marriage turned out, but she was not deceived in entering into it. The facts in this case are very similar to those in *Woronzoff-Daschkoff v Woronzoff-Daschkoff* (303 NY 506), in which the Court of Appeals stated (p 510): "The trial court found that defendant had made all the representations alleged in the complaint, and that plaintiff had relied on them in giving her consent to the marriage. Those representations, so held the trial court, were all false in that defendant had, in Paris, received a large sum of money from his former wife, as a price for divorce, that defendant's sole purpose in marrying plaintiff was to get money for his own life of idleness and for his relatives, that to accomplish this he permitted plaintiff to pay all the honeymoon expenses and took money from her, that he attempted secretly to collect commissions from the contractor who remodeled plaintiff's home, that he tried to get money from plaintiff on the pretext of starting a business and tried to get her to set up a trust fund with him as her trustee, that he never made any real effort to find work or to support himself, and that he at no time offered 'to fulfill his marital obligation and promise to plaintiff to provide a home for her and to support himself'. Such were the findings." The Court of Appeals went on to hold (pp 511–512): "Defendant, on that showing, was no model of chivalry or propriety. That proof, believed by the trier of the facts, was enough, we will assume, to expose him as a fortune hunter, a sluggard, a hypochondriac, and a man who took his promises lightly. But this is a suit to annul a marriage for fraud, and, while we have, for better or worse, retreated *(di Lorenzo v. di Lorenzo,* 174 N. Y. 467; *Shonfeld v. Shonfeld,* 260 N. Y. 477, 481) from the old idea that marriages can be voided only for frauds going to the essentials of marriage, that is, consortium and cohabitation, it is, nonetheless, still the law in New York that annulments are decreed, not for any and every kind of fraud *(Mirizio v. Mirizio,* 242 N. Y. 74, 80; *Svenson v. Svenson,* 178 N. Y. 54, 59) but for fraud as to matters 'vital' to the marriage relationship only *(Lapides v. Lapides,* 254 N. Y. 73, 80). Premarital falsehoods as to love and affection are not enough, nor disclosure that one partner 'married for money' ". While the fraud required for an annulment must be " 'of such a nature as to deceive an ordinarily prudent person' " (see *Shonfeld v Shonfeld, supra,* p 480; see, also, *Kober v Kober,* 16 NY2d 191, 195), it appears that the trial court used a different standard. For example, the trial court observed, in its decision, that "Although clear signs that the defendant never loved her *were evident to objective observers from the outset,* she [plaintiff] did not see them. She married under the spell of the defendant's protestations of love" (emphasis supplied). At another point in its decision the trial court stated, "In retrospect, the ingenious schemes of the defendant to take over the plaintiff's assets and real property ought to have become clear to her long before it did. Such hindsight, however, is seldom given to those in love. The prudence required to be shown by the mythical 'ordinary man' must be applied reasonably by a court to the actual 'ordinary woman in love'." There is even an admission in plaintiff's brief that "although clear signs that appellant never loved her, wanted only her money and had used her,

*may have been evident to objective observers from the outset,* respondent did not see them" (emphasis supplied). In other words, all concerned seem to agree that an "ordinarily prudent person" would not have been deceived by defendant's conduct and/or statements and would not have entered into marriage in reliance thereon. Such conduct or statements, therefore, cannot support the judgment. Plaintiff argues that the trial court did not err in finding that defendant's sole purpose in inducing plaintiff to marry him was to evade the United States immigration laws pertaining to the entry of aliens. While fraud on this point might, in certain cases, constitute grounds for annulment (see, e.g., *Brillis v Brillis,* 4 NY2d 125), the fact is the trial court made *no* such finding in this case. Finally, a careful review of the record convinces that, subsequent to June 15, 1973, almost two years after these parties were married, and with full knowledge of all that had gone on, plaintiff voluntarily cohabited with defendant and had sexual intercourse with him as his wife. She so testified. Accordingly, were we not reversing the judgment for failure of proof, we would reach the same result on the ground of condonation prior to commencement of the action (see Domestic Relations Law, § 140, subd [e]). In view of our conclusion that the marriage should not have been annulled, the case is remanded to Special Term for reconsideration of the provisions of the judgment concerning the ownership of and title to the various properties, as well as the award of counsel fees. Rabin, Acting P. J., Martuscello, Brennan and Munder, JJ., concur. Hopkins, J., concurs in the result, but only upon the ground of condonation.