LeslieAnn HAACKE (Glenn), Plaintiff
and Appellant,

v.

Mark Mitchell GLENN, Defendant
and Appellee.

No. 900531–CA.

Court of Appeals of Utah.

Aug. 6, 1991.

Mary C. Corporon, argued, Corporon & Williams, P.C., Salt Lake City, for plaintiff and appellant.

Mark Mitchell Glenn, pro se.

Before BENCH, BILLINGS and GARFF, JJ.

## OPINION

GARFF, Judge:

Appellant LeslieAnn Haacke appeals a final order denying her a decree of annulment and granting her a decree of divorce. Appellant asserts that the court erred because the findings supported a decree of annulment. We reverse and remand.

## FACTS

Appellant, LeslieAnn Haacke and appellee, Mark Mitchell Glenn participated in a marriage ceremony on December 16, 1989 in Bountiful, Utah. At the time of the ceremony, Haacke was employed as an attorney for the Inspector General's Division of the Utah Department of Corrections. As part of her job she had unlimited access to criminal files and records. Thus, a marriage with a convicted felon would create a severe conflict of interest and would place Haacke in violation of state policy and procedure, and state statute.

Prior to and during the parties' marriage, Glenn deliberately and intentionally concealed from Haacke the fact that he had been convicted of a second degree felony, theft of property, in Alabama. In fact, Glenn told Haacke that the purpose for his frequent travels to Alabama was to take care of prior child support obligations, when in fact he was using the parties' joint funds for payment of fines and restitution attendant to his felony conviction. Haacke did not become aware of Glenn's criminal record until she was informed by her employer. Subsequently, Gary W. DeLand, Executive Director of the Utah Department

of Corrections, in a letter dated September 4, 1990, told Haacke that because of her marriage to a convicted felon, the Attorney General had determined there was a conflict of interest and, therefore, her employment with the department would terminate effective September 14, 1990. DeLand told her that she would be considered for reemployment in the event "the current circumstances were to change, eliminating the conflict of interest." In a later letter, Haacke was informed that, even if she were to dissolve her marriage through divorce, the department would investigate whether or not she had been aware of Glenn's criminal record prior to the marriage.

In response to discovering Glenn's deception, Haacke filed a complaint for divorce. She later amended her complaint to request an annulment. The parties entered into a stipulation in which they consented to the entry of a decree of annulment. However, when the court heard the matter on September 14, 1990, it refused to grant the annulment, and instead granted a divorce. The court based the grounds for divorce on the following finding:

> Plaintiff should be awarded a Decree of Divorce in this matter in that prior to the marriage, Defendant did make fraudulent misrepresentations concerning his honesty, trustworthiness and lack of criminal involvement. Defendant failed to inform Plaintiff that he had been convicted of a felony in the state of his previous residence, Alabama; he informed Plaintiff that he was traveling to Alabama to take care of prior child support obligations and problems when in reality he was utilizing the funds of these parties for payment of fines and restitution, and he failed to inform Plaintiff of his prior criminal activity, much to Plaintiff's detriment in the form of loss of her employment with the State of Utah, Department of Corrections.

Haacke does not challenge the court's findings, but appeals the court's conclusion that she is not entitled to an annulment.

## ANNULMENT

Utah Code Ann. § 30–1–17.1(1) specifies two general categories of grounds for annulment. The first is for marriages that do not conform to Utah Code Ann. § 30–1–1. The second category allows for annulment "upon grounds existing at common law." Utah Code Ann. § 30–1–17.1(2). Haacke claims that the lower court erred in failing to grant her an annulment on the common law ground of fraud.

 Under common law, a marriage could be annulled for a fraud going to the essence of the marriage. *Wolfe v. Wolfe,* 62 Ill.App.3d 498, 19 Ill.Dec. 306, 309, 378 N.E.2d 1181, 1184 (1978); *Avnery v. Avnery,* 50 A.D.2d 806, 375 N.Y.S.2d 888, 890 (1975); *Douglass v. Douglass,* 148 Cal. App.2d 867, 307 P.2d 674, 675 (1957); *Bing Gee v. Chan Lai Yung Gee,* 89 Cal.App.2d 877, 202 P.2d 360, 364 (1949). The fraud must be such that directly affects the marriage relationship rather than "merely such fraud as would be sufficient to rescind an ordinary civil contract." *Bing Gee,* 202 P.2d at 364. The misrepresentation must go to present and not future facts. *Wolfe,* 19 Ill.Dec. at 310, 378 N.E.2d at 1185. Further, the fraud must be material to such a degree that, had the deceived party known of the fraud, he or she would not have consented to the marriage. *Avnery,* 375 N.Y.S.2d at 890. "The test in all cases is whether the false representations or concealment were such as to defeat the essential purpose of the injured spouse inherent in the contracting of a marriage." *Douglass,* 307 P.2d at 675.

As to the form the fraud takes, it may "consist of an affirmative false representation or the withholding of the truth when it should be disclosed." *Costello v. Porzelt,* 116 N.J.Super. 380, 282 A.2d 432, 434 (1971).

In determining fraud, courts have adopted a subjective standard and have considered the facts of the particular marriage. *Wolfe,* 19 Ill.Dec. at 311, 378 N.E.2d at 1186 (where husband concealed his prior marital history from Roman Catholic wife); *Costello,* 282 A.2d 432 (where husband omitted to tell wife of his heroin addiction);

*Lamberti v. Lamberti,* 77 Cal.Rptr. 430, 432, 272 Cal.App.2d 482 (1969) (where husband's secret intent in marrying was to acquire an advantageous alien status and where he falsely promised to go through a subsequent religious ceremony); *Parks v. Parks,* 418 S.W.2d 726 (Ky.1967) (where wife falsely represented at time of marriage that she was pregnant); *Kober v. Kober,* 16 N.Y.2d 191, 211 N.E.2d 817, 264 N.Y.S.2d 364 (1965) (where husband failed to disclose his extreme anti-Semitism to wife); *Handley v. Handley,* 179 Cal.App.2d 742, 3 Cal.Rptr. 910 (1960) (where wife secretly intended not to live with husband and not to adopt his name); *Osborne v. Osborne,* 134 A.2d 438 (D.C.1957) (where husband secretly intended not to live with his wife); *Rathburn v. Rathburn,* 138 Cal. App.2d 568, 292 P.2d 274, 277 (1956) (where wife secretly intended not to consummate the marriage); *Vileta v. Vileta,* 53 Cal. App.2d 794, 128 P.2d 376, 377 (1942) (where wife did not disclose her infertility); *Rubman v. Rubman,* 140 Misc. 658, 251 N.Y.S. 474 (1931) (where husband falsely told wife he loved her and did not disclose that real reason for marriage was to avoid deportation). *See also Leventhal v. Liberman,* 262 N.Y. 209, 186 N.E. 675 (1933) (where husband did not disclose he had tuberculosis and was a narcotics addict).

Courts have recognized that justice may demand that an annulment be granted even though there is no case with the same set of specific facts. *Means v. Industrial Comm'n,* 110 Ariz. 72, 75, 515 P.2d 29, 32 (1973). This includes cases where the grounds pleaded for annulment could also constitute grounds for divorce, such as here. *Id.*

█ As to the factual pattern of this case, courts have granted annulments where one spouse has concealed from the other a criminal background. *Lockwood v. Lockwood,* 29 Misc.2d 114, 220 N.Y.S.2d 718 (1961) (where husband did not disclose his former drug addiction and prior criminal record); *Douglass,* 307 P.2d at 676 ("the fraud of the defendant in concealing his criminal record and true character was deceit so gross and cruel as to prove him to

plaintiff to be a man unworthy of trust, either with respect to his truthfulness, his moral character or a disposition to be a law-abiding citizen.").

The court's findings in the instant case present a strong case for annulment on the common law ground of fraud. Glenn's fraud went to the fact, present at the time of the marriage, that he had a felony criminal record. He affirmatively represented to Haacke that he traveled to Alabama to take care of child support arrearages. He falsely represented that joint funds were being used for child support when, in reality, the real purpose was to pay fines and restitution. Not only did Glenn's fraudulent misrepresentation affect Haacke's career, but, more importantly, it defeated "the essential purpose of the injured spouse inherent in the contracting of a marriage." *Douglass,* 307 P.2d at 675. We think the same considerations given by the *Douglass* court have validity here. "There was no reason whatever to doubt that in consenting to marry defendant her purposes were ... namely, to have a home, a husband of honorable character whom she could respect and trust, one whom she would be proud to have as a companion and to introduce to her friends, and who would be a suitable [father] for her children." *Douglass,* 307 P.2d at 676.

Considering the relevant case law, and applying a subjective analysis to the particular marriage, we conclude that the original false representations and concealments by Glenn so violated the essential purpose of the marriage, that Haacke is entitled to an annulment. We therefore reverse the decree of divorce and remand for the court to enter a decree of annulment.

Reversed and remanded.

BENCH and BILLINGS, JJ., concur.