[L. A. No. 11596. In Bank.—June 12, 1931.]

ELIZA M. MARSHALL, Appellant, v. WILLIAM J. MARSHALL, Respondent.

John C. Miles for Appellant.

No appearance for Respondent.

Joseph Scott and A. G. Ritter, *Amici Curiae.*

THE COURT.—This appeal is from a judgment of the trial court denying a decree of annulment of the marriage of the plaintiff and defendant in the action therefor instituted by the plaintiff, after her marriage with the defendant and the consummation thereof, and after she had lived with the defendant for a period of several months. The basis of the plaintiff's action was the alleged fraud of the defendant in procuring her consent to enter into the marriage, which she alleged consisted in the false and fraudulent representation of the defendant that he was a man of means, having sufficient funds and income to provide for the plaintiff's support and maintenance during their married life, and that he would support and maintain her in the position in life to which she was accustomed, upon which alleged false and fraudulent representation the plaintiff avers that she relied in consenting, entering into and consummating said marriage. The plaintiff sets forth in detail the extent to which the representations of the defendant in the foregoing regard were unfounded and the humiliation she suffered thereby, and on account whereof she left the defendant and ceased to cohabit with him when the fact of his impecunious situation and harassment by creditors became known. The defendant was served by publication and failed to appear and contest the action. Nevertheless the trial court upon the hearing and upon proof of the foregoing facts refused to grant to the plaintiff an annulment of her marriage with the defendant and entered a judgment denying such annulment. The plaintiff appealed from the judgment. The defendant has failed to make any appearance upon the appeal and has filed no brief thereon, nor otherwise responded to an order to show cause issued herein. There has been

presented, however, the brief of certain attorneys who, at the request of the trial court, undertook to file said brief as *amici curiae*, dealing with the matter of annulment of mar-. riages, a sufficiently public matter to justify said course.

■ The fraud upon which the plaintiff relied as her sole ground for the annulment of her marriage with the defendant consisted in his alleged fraudulent representation as to his wealth and ability to support and maintain her during their married life in the position in life to which she had been accustomed. Such fraudulent representation, conceding it to have been made and to have been relied upon by the plaintiff, did not, in our opinion, amount to the species of fraud contemplated by subdivision 4 of section 82 of the Civil Code as constituting a sufficient ground for the annulment of a consummated marriage under the provisions of said section of the code. In the case of *Millar* v. *Millar*, 175 Cal. 797 [Ann. Cas. 1918E, 184, L. R. A. 1918B, 415, 167 Pac. 394, 396], this court proceeded to declare the underlying principles upon which the annulment of marriages should be allowed or denied. In so doing the court stated: "It may be readily conceded that a court should not annul a marriage on the ground of fraud, except in extreme cases where the particular fraud goes to the very essence of the marriage relation, and especially is this true where the marriage has been fully consummated, and the parties have actually assumed all the mutual rights and duties of the relation. In such a case considerations of public policy intervene, and courts are loath to annul a marriage." It is true that in the case above cited the trial court annulled the marriage and that this court affirmed its judgment to that effect. ■ In affirming such judgment, however, this court reviewed the decisions, chiefly of other jurisdictions, which bore upon the question as to what nature of fraud on the part of a defendant would suffice to support an annulment proceeding, and it is shown by these authorities and clearly pointed out in said decision that the character of fraud required to support such a proceeding must go to the very essence of the marriage relation as, for example in that case, the promise of the defendant to consummate the marriage by the assumption of sexual relations, which promise was made without the intention of performing it, and which relations were persistently resisted and refused by the de-

fendant. In the cases cited by the court from other jurisdictions similar instances are to be found, furnishing the only proper basis sounding in fraud for the annulment of marriages, such as a misrepresentation of the physical capacity of the party to consummate the marriage by coition, or a misrepresentation as to a previous state of chastity, or as to the concealment of an existing and infectious sexual disease. These instances illustrate the principle to which this court gave expression in *Millar* v. *Millar, supra,* in stating that a marriage should not be annulled "except in extreme cases where the particular fraud goes to the very essence of the marriage relation". In the case of *Barnes* v. *Barnes,* 110 Cal. 418 [42 Pac. 904, 905], while not an action for the annulment of a marriage, but one to set aside certain transfers of property made prior to a marriage and alleged to have been induced by fraudulent representations, this court quoted certain significant language from Schouler on Domestic Relations, section 23, and cases cited, to the effect that an executed contract of marriage, accompanied by full consummation, differs in many respects from ordinary contracts. It creates a status which society is interested in maintaining. The court proceeds to quote: "In that contract of marriage which forms the gateway to the *status* of marriage the parties take each other for better, for worse, for richer, for poorer, to cherish each other in sickness and in health; consequently a mistake, whether resulting from accident, or in general fraudulent practices, in respect to character, fortune, health, or the like, does not render void what is done. . . . A man who means to act upon such representations should verify them by his own inquiries. The law presumes that he uses due caution in a matter in which his happiness for life is so materially involved, and it makes no provision for the relief of a blind credulity, however it may have been produced." In 16 California Jurisprudence, 967, the rule, as derived from the foregoing authorities, is stated as follows: "The code does not define the kind or degree of fraud which will justify the annulment of a marriage, but certainly not every kind and degree of fraud that would be sufficient to void an ordinary contract is sufficient for annulment of a marriage contract. A marriage contract should not be annulled upon this ground, except in an extreme case where the particular fraud goes to the very essence of the marriage relation, and especially is this true where the marriage has

been fully consummated and the parties have actually assumed all the mutual rights and duties of the relation. In such a case considerations of public policy intervene and courts are loath to annul. A promise to be a kind, dutiful and affectionate spouse cannot be made the basis of an annulment. The concealment of incontinence, temper, idleness, extravagance, coldness, *or fortune inadequate to representations, is not sufficiently material."*

We are satisfied in view of the foregoing authorities that the appellant herein did not make out a sufficient case for the annulment of her marriage with the defendant.

The judgment is affirmed.