[No. G013349. Fourth Dist., Div. Three. Aug. 30, 1993.]

In re the Marriage of BRENDA and DONALD R. JOHNSTON.
BRENDA JOHNSTON, Respondent, v.
DONALD R. JOHNSTON, Appellant.

**COUNSEL**

Donald P. Bebereia for Appellant.

Milo F. De Armey for Respondent.

**OPINION**

**SONENSHINE, J.**—Donald R. Johnston appeals a judgment annulling his marriage to Brenda Johnston.

I

After a 20-month marriage, Brenda sought to have her marriage to Donald annulled. (Civ. Code, § 4425, subd. (d).) Donald agreed the marriage should be terminated but requested a judgment of dissolution be entered.

At the trial, Brenda testified she was unaware of Donald's severe drinking problem until after the marriage and she was upset to discover this and disappointed in his refusal to seek help. She knew before the nuptials that he was unemployed, but did not realize he would refuse to work thereafter. She stated their sex life after marriage was unsatisfactory and that he was dirty and unattractive. In short, he turned from a prince into a frog.

Donald testified to the contrary, but to no avail. The trial court believed Brenda. "There is a conflict in the testimony as to what happened in this

marriage. But the court tends to believe [Brenda] has told the truth when she's described the events of the marriage and what occurred before."

The court found Brenda's consent had been fraudulently obtained and annulled the marriage. Donald appeals.

## II

■ Donald complains the evidence is insufficient to support a finding of fraud.[1] He is correct.

Civil Code section 4425, subdivision (d) delineates the grounds for a voidable marriage: "A marriage is voidable and may be adjudged a nullity if . . . : [¶] . . . [¶] . . . [¶] . . . [¶] (d) The consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife." There was no fraud.

Civil Code section 1710 defines deceit as "either: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [¶] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, [¶] 4. A promise, made without any intention of performing it."

Brenda testified Donald told her "he wanted to get a job and with my help in his life, maybe I could help him get himself back together and get his feet on the ground and go out and get a job. And he wanted to get married to me, to have a nice life with me." She also explained that prior to the marriage she saw him regularly and "he was just very polite. Very nice. Very respectful to me. Clean-shaven. Bathed. Just very nice." But after they were wed he "never treated me with respect after the marriage, that is correct. And on many occasions[,] unshaven."

Even if Brenda's testimony was believed by the trial court, she presented insufficient grounds for an annulment.[2] The concealment of "incontinence, temper, idleness, extravagance, coldness or fortune inadequate to representations" cannot be the basis for an annulment. (*Marshall* v. *Marshall* (1931)

---

[1] The parties disagree whether findings of fact were requested. It does not matter. Even absent a statement of decision, and assuming the trial court made all necessary findings, the evidence does not support a finding of fraud.

[2] We therefore need not discuss whether Donald knew they were false when he made them or whether Brenda relied upon them in marrying him.

212 Cal. 736, 740 [300 P. 816, 75 A.L.R. 661], italics omitted.) If a shoe salesman's false representation that he owned his own shoe store fell short of "fraud sufficient to annul a marriage" in *Mayer* v. *Mayer* (1929) 207 Cal. 685, 694-695 [279 P. 783], or a future husband's statement that he was a "man of means" (when he was really "impecunious") was not enough in *Marshall* v. *Marshall*, *supra*, 212 Cal. at pages 737-738, how much less so are the grounds here, where the husband turned out to be, in the eyes of his wife, a lazy, unshaven disappointment with a drinking problem.[3] In California, fraud must go to the *very essence* of the marital relation before it is sufficient for an annulment. Thus, the trial court erred in granting the annulment.

## III

Brenda testified that during the marriage she executed an interspousal deed, transferring title to real property she owned prior to the marriage to her name and Donald's. The trial judge, after finding the marriage void, declared the deed null and void based upon the failure of consideration. In other words, she deeded the property to Donald because they were married. If the marriage is void, then so is the deed. Because we find the court erred in declaring the marriage void, we must also conclude this portion of the judgment must be reversed.

## IV

Donald appealed only the judgment of nullity and the disposition of the real property. Brenda did not file a protective cross-appeal, although the

---

[3]In *Mayer*, the Supreme Court reversed an annulment where the marriage had not even been consummated and the parties had never lived together as husband or wife. By contrast, here the court recognized the parties consummated their marriage but found Brenda's disappointment with the quantity and quality of the relationship as further grounds for the annulment. "Well, first of all, the court finds that especially in second marriages or in later in life marriages as opposed to early marriages, the parties are entitled to certain expectations. [¶] And foremost among them is a loving relationship, a loving, nurturing relationship. [¶] And that absent some very powerful financial considerations, which may be part of a lot of cases but are not a part of this case, is the basic reason for wanting to be married. [¶] In addition to that, any reasonably normal person, normal mature person, is entitled to be able to seek and have sexual satisfaction. [¶] And in the days where AIDS is a life threatening reality, people are certainly entitled to be able to look within a marriage for that satisfaction, both for fidelity and that type of satisfaction, because it's just too dangerous not to. [¶] Those things morally, theoretically have always been a consideration, but especially for the last 40 or 50 years, at least, that's not been a major item. I think it's a new ball game today, and I think that that's entirely within the expectations of a person in getting married."

judgment includes several other orders.[4] Moreover, we note the parties stipulated the value of the real property as of June 1992 was $139,000, the purchase price in January 1988 was $101,200 and Brenda's down payment was $19,400; the loan balance at the date of marriage was $82,459 and at the date of separation it was $81,392.56. The parties also stipulated "the negative on the property from October 1989 through June 1992 was $2,384."

Neither the reversal of the portion of the judgment regarding the real property nor the reversal of the judgment of nullity requires a reversal of the stipulation or other orders. Upon remand, the stipulation and the court's other orders shall remain.

The granting of a nullity of the marriage is reversed and a judgment of dissolution shall be entered. The parties' respective property rights in the real property shall be determined based on their previous stipulations. In all other respects, the judgment is affirmed. Donald shall receive his costs on appeal.

Sills, P. J., and Moore, J., concurred.

---

[4]The court found the money that was in the bank and the tax refund to be Brenda's separate property. "The court also [found] that [Donald] paid $9,000 for the boat and that whether or not [Brenda's] name was on the title at one time, that the boat, . . . , [was Donald's] separate property. [¶] As to the check, as to the funds for the sale of the previous boat, the court [found] that there was a fair distribution at the time; that each party got what they put into it and is not going to rule further on that."