Filed 6/8/18 (unmodified opinion attached)

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of SUMMER and ROBERT TURFE. | B276665 |
| _____ | (Los Angeles County Super. Ct. No. BD561532) |
| SUMMER TURFE, | |
| Respondent, | |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| ROBERT TURFE, | |
| Appellant. | |

BY THE COURT:

It is ordered that the opinion filed herein on May 30, 2018, be modified as follows:

On the caption of the opinion, after Honey Kessler Amado, insert a semi-colon and add "Feinberg Mindel Brandt & Klein, and Wallace S. Fingerett" so that counsel listing for Respondent reads as follows:

Honey Kessler Amado; Feinberg Mindel Brandt & Klein, and Wallace S. Fingerett for Respondent.

On page 8 of the opinion, in the first sentence of the first full paragraph, delete the words "found she was not credible with respect to her fidelity, but" so that the sentence reads as follows:

With respect to wife's credibility, the trial court "found her to be a credible witness on the issue of the Mahr Agreement and [found] that she did not engage in any misleading or deceptive conduct in order to induce [husband] to marry her.

The petition for rehearing is denied.

[There is no change in the judgment.]

_____

EDMON, P. J.          EGERTON, J.          DHANIDINA, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of SUMMER and ROBERT TURFE. _____ SUMMER TURFE, Respondent, v. ROBERT TURFE, Appellant. | B276665 (Los Angeles County Super. Ct. No. BD561532) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christine Byrd and Michael E. Whitaker, Judges.  Affirmed.

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller; Freid and Goldsman and Marci R. Levine; Turfe Law and Edward M. Turfe for Appellant.

Honey Kessler Amado for Respondent.

_____

Robert Turfe (husband) appeals a judgment of dissolution of marriage as to status only.  The judgment terminated his marriage to Summer Turfe (wife) and reserved jurisdiction over all other issues.[1]

Husband contends the trial court erred in denying his request for an annulment.  He asserts wife defrauded him by falsely promising at the time of the marriage to be bound by the "mahr agreement" that they entered into in accordance with Islamic law.[2]  The parties' mahr agreement provided that wife would receive a copy of the Quran in the event of a divorce.  The parties disagree as to whether the mahr agreement precluded wife from obtaining any other property in the event of a divorce, and the expert testimony at trial was in conflict with respect to the proper interpretation of the mahr agreement.

---

[1]    A "status only" dissolution judgment is immediately appealable as a final judgment on the issue of dissolution of marital status.  (Fam. Code, § 2337, subd. (a) [early and separate trial on dissolution of marital status]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 366; *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 116; Eisenberg, Cal. Prac. Guide: Civil Appeals & Writs (The Rutter Group 2017) § 2:62 – 2:63, pp. 2-47 – 2-48.)

All further statutory references are to the Family Code, unless otherwise specified.

[2]    A mahr agreement "is an agreement based on Islamic law under which a husband agrees to pay a dowry to his wife.  Generally, there is a short-term portion and a long-term portion.  The short-term portion is due immediately.  The long-term portion is the amount that the wife is entitled to take with her in the event of a divorce." (*In re Marriage of Obaidi and Qayoum* (2010) 154 Wash.App. 609, 612 [226 P.3d 787].)  In the mahr

Following a bifurcated trial, the trial court concluded that it was not persuaded by clear and convincing evidence that wife had intentionally misrepresented her intention to be bound by the mahr agreement in order to induce husband to enter into the marriage. Instead, the trial court found that the parties simply had different interpretations of the mahr agreement, which they did not discuss with one another, and that husband made the assumption that wife shared his interpretation of the agreement.

We conclude substantial evidence supports the trial court's determination, and we therefore uphold the trial court's decision which denied husband's request for an annulment based on fraud, and instead, entered a judgment of dissolution of marriage.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties were married in 2000. Their first child was born in 2002, and their second child was born in 2005.

1. *Pleadings*.

In March 2012, wife filed a petition for marital dissolution.

In May 2012, husband filed a response to the petition, claiming as his separate property his post-separation earnings and accumulations,[3] as well as other separate property assets not yet known. He also pled "[t]here are community and quasi-community assets and obligations of the parties, the exact nature and extent of which are unknown to [him] at the present time."

In January 2014, husband filed an amended response to the petition, requesting an annulment of the marriage based on fraud, and requesting specific performance of the mahr

---

agreement at issue here, the short-term portion was five gold coins and the long-term portion was a copy of the Quran.

[3] The date of separation is in dispute.

3

agreement. Husband's amended response denied the existence of any community property and requested that all his earnings and accumulations during the purported marriage be confirmed as his separate property.

2. *Bifurcated trial on the issues of nullity of marriage and validity and enforceability of the mahr agreement as a premarital agreement.*

The matter proceeded to a bifurcated trial on the issues of whether husband was entitled to an annulment, and whether the mahr agreement was a valid and enforceable premarital agreement that would limit the property to which wife would be entitled in the event of a divorce.

In seeking an annulment, husband asserted that wife fraudulently induced him to enter into the marriage by pretending to accept the mahr agreement when, in fact, she never intended to be bound by it. Husband testified that, as a devout Muslim, he would never have married wife if he had known that she considered the mahr agreement to be purely symbolic and that she never intended to be bound by it in the event of divorce.

The focus of the trial was Exhibit 300, a document signed by the parties at the time of marriage. The document was a form agreement prepared by the Islamic Center of America in Detroit, Michigan, where the parties were married. The form was primarily in Arabic and provided spaces for information to be entered, such as the names of the bride and groom, the names of their parents, and the name of the imam performing the marriage ceremony. The form was filled in by an imam of the Islamic Center and was signed by each of the parties. The title of the document was translated from Arabic to English as "Marriage Certificate." At issue was the section entitled "Dowry"

4

(as translated from Arabic to English). This portion of the marriage certificate is referred to as the mahr agreement. The certified translation of the subject mahr agreement stated as follows: "5 Golden coins[4] paid in advance and a copy of Quran deferred."

The parties agreed that the mahr agreement is an essential element of an Islamic marriage, but disagreed as to its meaning and significance. Wife contended the mahr agreement is a traditional part of the wedding ceremony and that its terms are merely symbolic. Husband's position was that the mahr agreement is an enforceable contract that specifies the entirety of the property that wife will receive in the event of a divorce.

Both parties called religious scholars as expert witnesses regarding the mahr agreement. Husband's expert was Imam Hassan Qazwini from the Islamic Center of America, who officiated at the parties' wedding. Wife's expert was Dr. Muzammil Siddiqi, an imam at the Islamic Society of Orange County. According to both experts, a mahr agreement is required in order for a marriage to be valid under Islamic law. Both experts also testified that they would not perform an Islamic wedding absent a mahr agreement.

The experts disagreed, however, with respect to the impact of the mahr agreement on wife's entitlement to any other property upon dissolution. Dr. Siddiqi testified there is a difference of opinion among Islamic scholars with respect to the interpretation of the mahr agreement, and that he disagreed with

---

4    Witnesses alternatively referred to the consideration as "5 golden liras," but the varying translations have no bearing on the issues before us.

5

the position that a wife "only gets what is written on that document at divorce and [not] anything else." Imam Qazwini, in contrast, testified that pursuant to the parties' mahr agreement, wife was entitled to five gold coins at the time of the marriage, and a copy of the Quran at the time of divorce, and "that's all she's entitled to out of their property."

3. *Statement of decision.*

After the matter was submitted, the trial court ruled in relevant part:

The fact that the mahr agreement was a critical personal issue for husband did not change the fact that, if accepted, his argument would invalidate the parties' marriage based solely on something required by his religious beliefs but not required under California law. Annulment on such grounds is prohibited by section 420, subdivision (c).[5]

The trial court further found: "If the religious aspect is ignored and only the subject matter is considered – property division in the event of divorce – still it is not a proper basis for annulment because it is a subject on which California law does not require any agreement at the time of marriage. While California law allows for a premarital agreement on property division in the event of divorce, . . . such an agreement is not required for a marriage to be valid under California law. [Husband's] position would make it a requirement simply because it was important to him personally. Grounds for annulment are limited to matters that go to the essence of the

---

[5] Section 420 states at subdivision (c): "A contract of marriage, if otherwise duly made, shall not be invalidated for want of conformity to the requirements of any religious sect."

marital relationship and do not include all matters, regardless of personal importance. [¶] . . . . [T]he Court finds that neither the Mahr Agreement, nor any fraud in connection with it, goes to the essence of the marital relationship. Consequently, [husband's] claim of fraud with respect to the Mahr Agreement, even if proved, does not provide grounds for annulment, however important the Mahr Agreement was to [husband] personally."

The trial court further found that husband's evidence of fraud was insufficient. It stated: "[E]ven if the Mahr Agreement could constitute grounds for fraud, having heard the testimony of both parties and other witnesses and considered their credibility, the Court is not persuaded by clear and convincing evidence that [wife] intentionally misrepresented her intentions under the Mahr Agreement in order to induce [husband] into marriage.

"The parties agree that the Mahr Agreement required [husband] to give gold coins to [wife] at the time of the marriage and that it requires [him] to give her a copy of the Quran at the time of divorce. [Husband] contends, however, that a Mahr Agreement limits a wife's property rights in the event of divorce and, therefore, [wife] is entitled only to the property listed in the Mahr Agreement. [Wife] contends that a Mahr Agreement is traditional and symbolic and does not limit her property rights. In essence, [husband] claims that the Mahr Agreement represents the maximum that [wife] is to receive in the event of divorce while [wife] claims that the Mahr Agreement represents the minimum that she is to receive. The fraud claimed is that [wife] intentionally deceived [husband] as to her views on the Mahr Agreement.

"The evidence presented was insufficient to establish that [wife] intentionally deceived [husband] regarding the Mahr

7

Agreement. The evidence did not show any back-and-forth negotiations between the two of them or any in-depth discussions during which [wife] could have misled [husband] as to her views. [Husband] offered the gold and a copy of the Quran and [wife] accepted. That was it. The question of whether the Mahr Agreement represented a minimum or a maximum, or was symbolic or literal, was never discussed. It appears that [husband] assumed that when [wife] agreed to his terms for the Mahr Agreement, she also agreed with his view that the Mahr Agreement limited her property rights to those specified items. As it turned out, she did not. The evidence at trial demonstrated that two religious scholars, both well educated in the Islamic religion and traditions, also disagree on this issue, i.e., whether limitation of the wife's rights to any other property is implied in every Mahr Agreement. The mere fact that the parties had different views but did not discover this until later does not establish that one intentionally misled the other. Proof of fraud requires more than proof of disagreement."

With respect to wife's credibility, the trial court found she was not credible with respect to her fidelity, but "found her to be a credible witness on the issue of the Mahr Agreement and [found] that she did not engage in any misleading or deceptive conduct in order to induce [husband] to marry her. Having heard [wife] testify in person as well as in her videotaped deposition, the Court [was] not persuaded that [wife] could have formulated the fraud scheme claimed by [husband] and then continued the deception over the next decade of marriage, which included the birth of two children, all the while keeping secret something that [husband claimed] was so important to him."

For these reasons, the trial court found husband's evidence of fraud was insufficient and denied his request to annul the marriage on that basis.

The remaining issue was husband's contention that the mahr agreement was enforceable as a premarital agreement limiting the property to be received by wife in the event of divorce to the items identified therein. The trial court concluded the mahr agreement did not satisfy the statutory requirements for a premarital agreement (see § 1600 et seq.).[6]

On July 12, 2016, the trial court entered a judgment of dissolution as to status only, reserving jurisdiction over all other issues. On July 28, 2016, husband filed a timely notice of appeal.

## CONTENTIONS

Husband contends: the trial court erred in denying him relief pursuant to section 420 because he sought annulment based on fraud, not based on the marriage's lack of conformity to the requirements of any religious sect; wife's deceit in pretending to accede to the requirements of a valid Islamic marriage constituted fraud that went to the very essence of the marital relationship, requiring that the marriage be invalidated; and the uncontradicted and unimpeached evidence was of such character and weight as to support a finding of wife's fraud in swearing that she would abide by the mahr agreement.

---

[6] On appeal, husband does not challenge the trial court's determination that the mahr agreement was not enforceable as a premarital agreement. (See *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 406–407 [parties' mahr agreement was unenforceable as a premarital agreement].)

9

## DISCUSSION

1. *General principles governing annulment of marriage on basis of fraud.*

The issue before this court is not the enforceability of the mahr agreement (see, generally, Sizemore, *Enforcing Islamic Mahr Agreements: The American Judge's Interpretational Dilemma* (2011) 18 Geo. Mason L. Rev. 1085), because husband is not seeking to enforce the agreement. Rather, the issue is whether husband is entitled to an annulment of the marriage on the ground that wife deceived him by promising to be bound by the mahr agreement.

"The law in California has long been that an annulment of marriage may be granted on the basis of fraud only 'in an extreme case where the particular fraud goes to the very essence of the marriage relation.' [Citations.]" (*In re Marriage of Meagher & Maleki* (2005) 131 Cal.App.4th 1, 3 (*Meagher*).) Stated another way, " 'a marriage may only be annulled for fraud if the fraud relates to a matter which the state deems vital to the marriage relationship. [Citations.]' [Citation.] As one court explained, 'because of its peculiar position as a silent but active party in annulment proceedings[,] the state is particularly interested in seeing that no marriage is declared void as the result of fraud *unless the evidence in support thereof is both clear and convincing*. Thus[,] . . . [because] "[t]he state has a rightful and legitimate concern with the marital status of the parties[,] . . . the fraud relied upon to secure a termination of the existing status must be such fraud as directly affects the marriage relationship and not merely such fraud as would be sufficient to rescind an ordinary civil contract." ' " (*Id.* at pp. 6–7, italics ours, original italics omitted.)

10

*Meagher* noted that annulments "on the basis of fraud are generally granted only in cases where the fraud related in some way to the sexual or procreative aspects of marriage." (*Meagher*, *supra*, 131 Cal.App.4th at p. 7, and cases cited therein.) The paradigm example of such fraud is where a spouse " 'harbors a secret intention at the time of the marriage not to engage in sexual relations with [the other spouse]. [Citations.]' (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 156; accord, e.g., *Handley v. Handley* (1960) 179 Cal.App.2d 742, 746; *Millar v. Millar* (1917) 175 Cal. 797.) Similarly, 'the secret intention of a woman concealed from her husband at the time of marriage never to live with him in any home provided by him would be a fraud going to the very essence of the marriage relation and of such a vital character as to constitute [a] ground for annulment.' (*Bruce v. Bruce* [(1945)] 71 Cal.App.2d [641,] 643.) Annulment has also been held justified based on a wife's concealment that at the time of marriage she was pregnant by a man other than her husband (*Hardesty v. Hardesty* (1924) 193 Cal. 330; *Baker v. Baker* (1859) 13 Cal. 87), or on a party's concealment of his or her sterility (*Vileta v. Vileta* (1942) 53 Cal.App.2d 794) or intent to continue in an intimate relationship with a third person (*Schaub v. Schaub* (1945) 71 Cal.App.2d 467)." (*Meagher, supra,* 131 Cal.App.4th at p. 7.)

*Meagher* continued, "In the absence of fraud involving the party's intentions or abilities with respect to the sexual or procreative aspect of marriage, the long-standing rule is that neither party 'may question the validity of the marriage upon the ground of reliance upon the express or implied representations of the other with respect to such matters as character, habits, chastity, business or social standing, financial worth or prospects,

11

or matters of similar nature.' (*Schaub v. Schaub, supra,* 71 Cal.App.2d at p. 476, italics [omitted].) In *Marshall v. Marshall* [(1931)] 212 Cal. 736, 740, for example, the court expressly held that the trial court properly denied relief to a wife who sought an annulment on the basis of her husband's 'fraudulent representation as to his wealth and ability to support and maintain' her, when in fact he was 'impecunious' and subject to 'harassment by creditors.' (*Id.* at pp. 737–738; accord, *Mayer v. Mayer* (1929) 207 Cal. 685, 694–695 [shoe salesman's misrepresentation that he owned shoe store not sufficient grounds for annulment].)" (*Meagher, supra,* 131 Cal.App.4th at p. 8.)

2. *Substantial evidence supports trial court's factual determination that wife did not deceive husband with respect to her intentions in entering into the mahr agreement.*

The evidence adduced at trial showed the following:

The parties discussed the necessity of a mahr agreement as a requirement for entering into the marriage. Husband suggested five gold coins at the time of marriage and a copy of the Quran in the event of a divorce, and wife agreed. However, there was no discussion prior to the marriage in which the parties agreed that in the event of a divorce, wife would receive a copy of the Quran and nothing else. Further, Imam Qazwini, who officiated at the wedding, never told wife that "if there was a divorce, she would get the Quran and [husband] would keep everything else." It was not until the dissolution proceedings that the parties learned of their discordant understandings of the mahr agreement.

Further, the parties' respective experts, like the parties, differed with respect to the impact of the mahr agreement on wife's entitlement to any other property.

As indicated, Imam Qazwini, on behalf of husband, testified that under the terms of the parties' mahr agreement, wife was entitled to five gold coins at the time of the marriage, and a copy of the Quran at the time of divorce; "that's all she's entitled to out of their property." Imam Qazwini acknowledged that he did not tell wife at the time of the wedding that she would be limited to a copy of the Quran upon divorce, but explained that "[i]t is implied, it doesn't need to be worded that way."

Dr. Siddiqi, wife's expert, testified to a difference of opinion among Islamic scholars with respect to the interpretation of the mahr agreement, and that he disagreed with the position that a wife "only gets what is written on that document at divorce and [not] anything else."

Because the parties entered into the mahr agreement without discussing their understandings of its impact in the event of a divorce, and because the expert testimony showed that religious scholars disagree as to whether the consideration specified in the mahr agreement is the sum total of what wife may recover in the event of divorce, substantial evidence supports the trial court's determination that wife did not deceive husband with respect to her intentions in entering into the mahr agreement. The trial court properly concluded that the parties simply had different understandings with respect to the interpretation of the mahr agreement, and that husband made the assumption that wife shared his interpretation.

In other words, contrary to husband's position, the mere fact that wife entered into the mahr agreement does not compel

13

the conclusion that she deceived him in entering into the marriage.  Husband's argument that wife defrauded him when she agreed to be bound by the mahr agreement makes the assumption that there is a universal understanding of the impact of the mahr agreement in the event of a divorce.  Although husband's, and Imam Qazwini's, view is that *implicit* in the mahr agreement is that wife would receive nothing else in the event of a divorce, the evidence showed there is no such consensus and that religious scholars disagree on that issue.

Further, although husband claims wife lied at the time of the marriage, when she promised to be bound by the mahr agreement, the trial court specifically found that wife was "a credible witness on the issue of the Mahr Agreement and . . . that she did not engage in any misleading or deceptive conduct in order to induce [husband] to marry her."  It is settled that it is "not for this court to weigh the evidence or pass upon the credibility of the witnesses." (*Smith v. Smith* (1941) 42 Cal.App.2d 652, 654; accord, *In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 920.)

For these reasons, the trial court, after weighing the evidence, properly found that husband failed to meet his burden to establish by clear and convincing evidence that wife fraudulently induced him to enter into the marriage.

3. *Other issues not reached.*

Having concluded that the trial court properly rejected husband's claim that wife deceived him at the time they entered into the mahr agreement, it is unnecessary to address whether such alleged fraud " 'goes to the very essence of the marriage relation' " (*Meagher, supra,* 131 Cal.App.4th at p. 3) so as to serve as the basis for an annulment.

14

Because husband's failure to prove fraud requires affirmance of the judgment denying his request for an annulment, it is also unnecessary to address the trial court's additional holding that an annulment would violate section 420, subdivision (c) [marriage shall not be invalidated for want of conformity to the requirements of any religious sect].

## DISPOSITION

The judgment of dissolution is affirmed. Wife shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:


EGERTON, J.


DHANIDINA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15