Filed 9/13/22 Marriage of Alamshahi CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re the Marriage of SYED and ZEADA ALAMSHAHI. | C094347 |
| SYED ALAMSHAHI,<br><br>Respondent,<br><br>v.<br><br>ZEADA ALAMSHAHI,<br><br>Appellant. | (Super. Ct. No. STAFLDWC20180002963) |

Zeada Alamshahi (appellant) appeals from a trial court judgment of dissolution, specifically the trial court's determination that an interspousal transfer deed from Syed Alamshahi (respondent) granting appellant a house acquired during the marriage as her sole and separate property was not a valid transmutation and thus the residence was community property. We find substantial evidence in the record to support the trial court's decision and affirm the judgment.

1

# I

# BACKGROUND

The parties were married on October 16, 1999. On May 29, 2018, respondent filed a marital dissolution petition alleging the date of their separation to be May 14, 2018. On September 5, 2018, appellant filed her own dissolution action, alleging the same dates of marriage and separation.

*A. Trial*

At trial, appellant testified that she met respondent through a friend in March 1999. Respondent met with appellant's family at their house to propose marriage to appellant. Her father, mother, sisters, and brother were present. The conversation took place in the living room and was mostly with her father. Respondent promised to give appellant a house for a dowry after they were married.

Appellant and respondent were engaged in June 1999. The dowry proposal had already been made and agreed upon. They had an American marriage ceremony in October 1999 and an Afghani Muslim ceremony in November 1999 on Thanksgiving.

At the November ceremony, appellant's brother was her representative to discuss the dowry. In a Muslim marriage, the marriage certificate normally includes the dowry agreement. Appellant looked for the dowry agreement but could not find it.

Appellant testified that in 2000 she purchased a home in Tracy for a down payment of $60,000. Appellant denied that she borrowed money from her sister-in-law for the down payment and stated the down payment was "[a] gift from my dowry." Appellant testified that only her income was considered in qualifying for a loan to buy the property. Appellant said she was making $2,000 a month working at Target as a supervisor and she also worked with her father in his upholstery business. Appellant testified that the monthly mortgage payment was "1,100 something."

Appellant testified that respondent signed the deed stating that the house belonged to appellant as a gift to her. He did not sign the loan documents for the house because he

2

had just filed bankruptcy, although the bankruptcy was not discussed with the people handling the loan documents to purchase the house.

When shown the interspousal transfer deed at trial where respondent stated that he was signing title to the property to appellant for "VALUABLE CONSIDERATION," appellant asked what that term meant. The trial judge clarified that it meant that appellant gave respondent something in return for signing the deed. When the judge asked appellant if she gave respondent something to sign the deed, she said no. Appellant testified that when she signed the deed she understood written English but not the meaning of all the terms, such as "valuable consideration." At the time, respondent spoke better English and at trial, appellant agreed that she still spoke limited English. Both appellant and respondent speak Farsi as their native language but the deed was not translated into Farsi.

Usually, a dowry is in writing and respondent testified that he did not have a written dowry agreement. He did not recall going to appellant's family house, proposing marriage, and telling the family he would give her a gift as a dowry. Respondent met appellant's parents when he went to her house to get engaged. Appellant testified that a dowry was discussed on the wedding night, not on the night of the engagement. Respondent agreed to pay 3,000 afghani, about $300, as a dowry.

Respondent testified they did not have an agreement to give appellant a house as a dowry. Respondent and appellant bought a house one year after they were married. They borrowed $44,000 from respondent's sister and he paid the remainder of the $60,000 down payment. Respondent's income was used to qualify for a loan to buy the house, but his name could not be on the loan itself because of his poor credit and previous bankruptcy filing. The mortgage payments were over $2,000 a month and were flexible, changing every month and they were able to afford the mortgage payments because of respondent's income. Appellant was working at Target making $1,200 to $1,400 per month, while respondent was making $4,000 to $5,000 per month.

Respondent testified that he agreed to sign title of the property to appellant. He transferred the property to appellant as her sole and separate property. Appellant did not give him anything to sign the deed and she did not force him to sign the deed. When respondent signed the deed, he did not understand written English completely and appellant only spoke a little English. The realtor explained what the deed said but respondent did not understand that he would be giving up his rights to the property.

Appellant's sister Fahima testified that she met respondent twice before appellant married him.[1] The first time he came to see her parents was at their home to propose marriage to appellant. Her parents, her sisters Nasima and Wasima, and her brother were present. Fahima heard respondent promise appellant a home as a dowry gift. Nothing was written down. Respondent said his credit was good and did not disclose that he had filed for bankruptcy.

Appellant's sister Nasima testified that she was also present when respondent came to her parents' house to propose marriage to appellant. Her parents, her sisters, and her brother were also present. Respondent made his proposal in the living room. Nasima heard respondent state that he would give appellant a house as a dowry.

Appellant's sister Wasima testified that she was present, along with her parents, sisters, and brother when respondent came to her parents' house to propose marriage. Wasima heard the dowry discussed in the living room. She heard respondent say he would buy appellant a house as a gift. Wasima did not recall respondent saying anything else.

Respondent's uncle Sayed testified that he was present at the engagement party. There was no discussion of a dowry that night that he was aware of. Sayed was also

---

[1] To avoid confusion and with no disrespect or informality intended, we refer to appellant's sisters Fahima Mayer, Nasima Mayer, and Wasima Mayer, and respondent's uncle Sayed Alamshahi, by their first names.

4

present at the marriage ceremony in November 1999 when there was a 30-minute discussion of a dowry between representatives of appellant and respondent. Appellant's brother represented her interest.

Mahiam Sahibzada attended the parties' wedding ceremony in November 1999. He testified that he saw but was not part of the group of 10 to 20 men of the family discussing a dowry. The discussion went on for 10 to 15 minutes. Appellant's brother was her representative. Sahibzada did not see any agreements written down and testified that it is common to write down a dowry.[2] He also testified that it is common to have dowry negotiations on the night of the wedding.

*B. Judgment*

Following trial, the court issued a lengthy "Final Statement of Decision and Order" on whether the interspousal transfer deed was a valid and enforceable transmutation. The court found that the property was purchased with a loan from respondent's sister and that appellant's monthly salary was below the amount of the initial monthly mortgage payments. Title was taken in appellant's name as her sole and separate property. Respondent executed an interspousal transfer deed granting the property to appellant as her sole and separate property for valuable consideration. Other than the deed, appellant failed to produce a document verifying that the property was a gift to her as her dowry. Respondent admitted that appellant did not force him to sign the deed.

---

[2] Sahibzada evidently was also testifying as an expert witness because appellant's counsel objected to a question as outside the scope of Sahibzada's expertise. In *In re Marriage of Turfe* (2018) 23 Cal.App.5th 1118, expert witnesses testified regarding a "mahr agreement" required for a valid marriage under Islamic law. (*Id.* at p. 1122.) "A mahr agreement 'is an agreement based on Islamic law under which a husband agrees to pay a dowry to his wife.' " (*Id.* at p. 1120, fn. 2.)

The court noted that English is not the first language of the parties and neither of them understood the significance of executing the deed, pointing to appellant's testimony that she did not understand the phrase "for valuable consideration." Appellant and her three sisters testified that they all heard the same thing, i.e., when appellant's father and respondent met to discuss the proposed engagement in the family living room, the terms of the dowry discussed were that respondent was to purchase a house for appellant. The court found this testimony not credible. However, there was other testimony that the dowry was not discussed until the day of the Muslim ceremony. The court questioned why appellant's father and brother did not testify and why appellant did not present the document that customarily listed the dowry. The court found more believable respondent's explanation that, because he had filed bankruptcy, he was advised by the real estate agent that his name could not be on the loan, as well as that appellant's income was not enough to qualify for a loan on her own, that respondent's income was considered, and they had to borrow from respondent's sister for the down payment.

The court ruled that appellant had failed to meet her burden of proof that respondent had a clear understanding of community property law, his community interest in the home, and the legal effect of the interspousal transfer deed. The court concluded that the deed was not a valid and enforceable transmutation, and the home was community property.

## II

## DISCUSSION

Appellant contends there is no substantial evidence to support the trial court's determination that the family home in Tracy is community property. We disagree.

*A. Legal Principles*

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." (Fam. Code, § 760.)

6

"A rebuttable presumption of undue influence arises when one spouse obtains an advantage over another in an interspousal property transaction." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 297; Fam. Code, § 721.) "The presumption of undue influence is regularly applied in marital transactions in which one spouse has deeded property to the other, as in *Haines*. In such cases, it is evident one spouse has obtained an advantage— the deeded property—from the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.)

" ' "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action 'was freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effect of' the transaction." [Citation.]' [Citation.] The advantaged spouse must show, by a preponderance of evidence, that his or her advantage was not gained in violation of the fiduciary relationship. [Citation.] ' "The question 'whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence.' " ' " (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.)

*B. Analysis*

There can be no doubt that appellant was advantaged by respondent signing an interspousal transfer deed, transferring his interest in the family home to appellant. It was, therefore, appellant's burden at trial to overcome the presumption that respondent signed that document as a result of undue influence. (*In re Marriage of Haines, supra*, 33 Cal.App.4th at p. 296.) There is substantial evidence that she failed to overcome the presumption.

Respondent did not understand the transmutation effect of an interspousal transfer deed under California's community property laws, i.e., that he was giving up all his rights

7

to a home bought with a down payment borrowed from his sister and mortgage payments made using his income. His understanding was that the deed was necessary to obtain a home loan, given his history of bankruptcy and poor credit. Appellant herself did not understand the meaning of the terms of the deed regarding valuable consideration, even though it was her only evidence of the promised dowry (beyond the identical testimonies of appellant and her sisters that the court did not find believable).

On appeal, appellant does not make a serious effort to challenge the trial court's ruling but instead contends that the trial court erroneously shifted the burden to appellant based on a discussion of authority—e.g., the common law presumption in Evidence Code section 662 (presumption of beneficial ownership by the owner of legal title may only be rebutted by clear and convincing evidence) and *In re Brace* (2020) 9 Cal.5th 903, 935 (Evid. Code, § 662 presumption does not apply where it conflicts with Fam. Code, § 760)—which appellant acknowledges is not pertinent to interspousal transfers. Indeed, in *Fossum*, the court noted that Evidence Code section 662 does not apply where it conflicts with the presumption of undue influence, which arises, as here, under Family Code section 721 "if (1) there is an interspousal transaction by which (2) one spouse gains an advantage over the other." (*In re Marriage of Fossum, supra*, 192 Cal.App.4th at p. 345.)

Further, much of appellant's opening brief is an attempt to undermine respondent's credibility. However, "[w]e will not second-guess the court's credibility assessment." (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 35; *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531 ["Appellate courts 'do not reweigh evidence or reassess the credibility of witnesses' "].)

On this record, we find sufficient evidence that appellant failed to overcome the presumption of undue influence on respondent in executing the interspousal transfer deed. Accordingly, there is sufficient evidence to sustain the trial court's decision to characterize the family home as community property.

## DISPOSITION

The judgment is affirmed.


/s/
BOULWARE EURIE, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
HULL, J.